**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DARYL V. RELEFORD, JR., and | : | 10-cv-1621 |
| DARCIUS B. RELEFORD, | : | |
| | : | Hon. John E. Jones III |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA STATE | : | |
| UNIVERSITY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM & ORDER

### March 14, 2011

## I. INTRODUCTION

Before the Court in this illegal discrimination action are three Motions to Dismiss the Amended Complaint. (Docs. 22, 23, 38.) For the reasons articulated below, the Court will grant in part and deny in part each Motion.

## II. STANDARDS OF REVIEW

### A. 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must

allege facts that 'raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 129 S. Ct. At 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 129 S.Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 127 S. Ct. 1964-65, 1969 n.8).

Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## B. 12(b)(1)

When considering a motion to dismiss pursuant to Rule 12(b)(1), a court is not limited to considering only the allegations on the face of the complaint if the defendant is challenging subject matter jurisdiction in fact. *Carpet Group Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000). In a challenge to subject matter jurisdiction, "no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Thus, the court is "free to weigh the evidence and satisfy itself whether it has the power to hear the case." *Carpet Group Int'l*, 227 F.3d at 69. A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction should be granted if the plaintiff does not carry the burden of persuasion to show that jurisdiction does in fact exist. *Id.*

## III. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Daryl ("Daryl") and Daricus ("Daricus") (collectively,

"Plaintiffs") are twin brothers who attended the Pennsylvania College of Technology ("Penn College"). Defendant Penn College is a technical college located in Lycoming County, Pennsylvania. It is a special mission affiliate college of the Pennsylvania State University ("Penn State"). Penn College is a "college, university, or other postsecondary institution" that receives "federal financial assistance" as described by Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000d-2000d-7 ("Title VI") and is an "educational institution" as set out in the Pennsylvania Fair Educational Opportunities Act of 1961, 24 P.S. §§ 5001-5010 ("PFEOA"). The Penn College Police Department ("Penn College Police") is a department of Penn College. (The above-named Defendants will be collectively referred to as "Institutional Defendants".)

Defendant Tim Mallery ("Assistant Directoy Mallery") was, at all relevant times, the Assistant Director of Resident Life/Coordinator of Housing Operations for Penn College. William Goddard ("Professor Goddard"), Gary Pandolfi ("Professor Pandolfi"), Wayne Gebhart ("Professor Gebhart"), Stephen Manbeck ("Professor Manbeck"), Garret Graff ("Professor Graff"), Robert Gresko ("Professor Gresko"), Richard Taylor ("Professor Taylor"), Peter Kruppenbacher ("Professor Kruppenbacher"), Dale Kissinger ("Professor Kissinger"), and Thomas Ask ("Professor Ask") are or were at all relevant times employed as

professors at Penn College.  Marc Bridgens ("Dean Bridgens") was, at all relevant times, Dean or Assistant Dean of Construction and Design Technologies for Penn College.  Ward Caldwell ("Special Assistant Caldwell") was employed as the Special Assistant to the President for Student Affairs during all times relevant to the action.  Carolyn Strickland ("Assistant Vice President Strickland") was, at all relevant times, the Assistant Vice President for Academic Services at Penn College.  Norman Hager ("Officer Hager") was employed as a police officer for Penn College Police and James Bies ("Assistant Chief Bies") was the Assistant Chief of Police for the Penn College Police at all relevant times.  (Collectively the above-named Defendants will be referred to as "Individual Defendants".  All Individual Defendants and Institutional Defendants shall be referred to collectively as "Defendants".)

Plaintiffs initiated this action alleging illegal discrimination on the basis of their African American race by Penn State and Penn College on August 4, 2010 (Doc. 1).  Plaintiffs thereafter filed the instant, twenty-two count Amended Complaint, naming all Defendants on October 19, 2010.  (Doc. 16.)  Based upon the following allegations, Daryl asserts the following counts: Contract Discrimination in violation of 42 U.S.C. § 1981 against the Individual Defendants (Count I); a violation of Due Process against the Individual Defendants pursuant

to 42 U.S.C. § 1983 (Count II); Retaliation in violation of § 1983 against the Individual Defendants (Count III); a deprivation of Equal Protection under § 1983 against all Defendants (Count IV); Title VI violations regarding Discrimination, Hostile Environment, and Retaliation against all Defendants (Counts V, VI, and VII, respectively); Pennsylvania Human Relations Act violations for Discrimination, Hostile Environment, and Retaliation against all Defendants (Counts VIII, IX, and X, respectively); violations of the PFEOA for Discrimination, Hostile Environment, and Retaliation against all Defendants (Counts XI, XII, and XIII, respectively); a claim of negligence against Defendants (Count XIV); and a claim for intentional infliction of emotional distress against all Defendants (Count XV). Daricus asserts the following, similar claims: Contract Discrimination in violation of § 1981 against the Individual Defendants (Count XVI); a deprivation of Equal Protection in violation of § 1983 against the Individual Defendants (Count XVII); Title VI violations related to Discrimination, Hostile Environment, and Retaliation against all Defendants (Counts XVIII, XIX, and XX, respectively); a claim for negligence against all Defendants (Count XXI); and a claim for intentional infliction of emotional distress against all Defendants (Count XXII).

During the spring of 2006, Daryl and Daricus both enrolled in the Heating,

Ventilating, Air Conditioning, and Plumbing ("HVAC/Plumbing") program at Penn College. Plaintiffs allege a litany of racial discrimination from that point in time until the present, beginning with Daryl arriving at his dormitory room to find a confederate flag on display and later being covered by the flag and a capirote while he slept, and continuing with regular derogatory remarks by students and, at times, professors, harassment by the Penn College Police, regular accusations of misconduct, and other conduct suggestive of racial animus. Plaintiffs allege that, despite reporting these instances, nothing was done by the administration to prevent or rectify the discrimination. Daryl was eventually suspended because his grade point average fell below a 2.0 for consecutive semesters, and thus was not allowed to return for the fall semester of 2010 or the spring semester of 2011. Daricus is still enrolled at Penn College. Plaintiffs seek declaratory and injunctive relief, compensatory damages, punitive damages related to certain claims, and attorneys' fees and costs.

Defendants Penn College and Penn College Police filed their Motion to Dismiss (Doc. 22) on November 1, 2010, and Penn State filed its own Motion to Dismiss on that same date (Doc. 23). As detailed below, the two Motions raise, essentially, the same arguments in support of dismissal with Penn State's Motion adding one argument relevant to their status. Thus, we will address the Motions

raised by the Institutional Defendants in conjunction. The Individual Defendants filed their Motion to Dismiss on December 20, 2010 (Doc. 38), and we shall analyze that Motion separately.

## IV. DISCUSSION

### A. The Institutional Defendants' Motions to Dismiss (Docs. 22-23)

The Institutional Defendants raise the following eight core arguments in support of dismissal of certain claims, and Penn State raises one additional argument: A) Counts V, VI, VII, XVIII, XIX, and XX must be dismissed against the Institutional Defendants because Plaintiffs fail to allege the requisite *prima facie* cases for each count; B) Counts VIII, IX, X, XI, XII, and XIII must be dismissed because of Daryl's alleged failure to exhaust administrative remedies; C) Counts VIII, IX, X, XI, XII, and XIII must be dismissed because Daryl fails to state causes of action upon which relief may be granted. Further, Defendants argue that the punitive damages claims in these counts must be dismissed because they are not permitted to be recovered under a PHRA or PFEOA claim; D) Count XIV must be dismissed because common law negligence claims are preempted by the PHRA; E) Count XV must be dismissed because the claim for intentional infliction of emotional distress is not independent of the discrimination claim and is preempted. Further, the Institutional Defendants maintain that punitive damages

cannot be maintained against them as instrumentalities of the state; F) Count XXI must be dismissed because negligence is preempted; G) Count XXII must be dismissed because the relevant circumstances render a claim for intentional infliction of emotional distress is preempted; H) The Defendants request a more definite statement regarding compensatory damages; and I) Penn State must be dismissed as a Defendant because Plaintiffs do not allege a single action taken by or on behalf of Penn State.

After filing the Motions, the Institutional Defendants withdrew their request for a more definite statement. Plaintiffs have withdrawn their negligence claims found in Count XIV and XXI, and have withdrawn their requests for punitive damages for the claims brought under the PHRA and the PFEOA. We will thus address each of the remaining arguments in turn.

1. *Counts V, VI, VII, XVIII, XIX, and XX*

Defendants claim that neither Daryl nor Daricus sufficiently alleged facts to establish a *prima facie* case for racial discrimination, hostile environment, or retaliation. Defendants further assert that punitive damages are inapplicable, and Plaintiffs have withdrawn their prayer for punitive damages with respect to these claims.

a. *Discrimination (Counts V and XVII)*

The *McDonnell Douglas* burden-shifting analysis applied to allegations of discrimination in employment has been adapted to address claims regarding discrimination in education. Thus, to prevail on a Title VI racial discrimination claim, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he suffered an adverse action by the defendants in his education; (3) despite being otherwise qualified; and (4) he was treated differently than similarly situated students who were not members of the protected class. *See Manning v. Temple Univ.*, 2004 U.S. Dist. LEXIS 26129, *5 (E.D. Pa. Dec. 30, 2004) (Bartle, J.) All parties agree that Plaintiffs are members of a protected class.

The Institutional Defendants first argue that Daricus fails to plead any adverse action that was taken against him related to his education, noting that he remains an active student at Penn College. The Institutional Defendants further assert that Daricus fails to satisfy the final element and identify how individuals who are not a member of his protected class were treated differently by the Institutional Defendants. Defendants likewise argue that Daryl has failed to satisfy these two elements. Defendants maintain that the "only identifiable alleged adverse action in the Amended Complaint is Plaintiff Daryl Releford's academic dismissal. . . ." And that he failed to allege facts to demonstrate that he was in fact qualified to continue his education. (Doc. 31 p. 6.) Finally, Defendants assert that

Daryl has not alleged facts to support that similarly situated students who were not members of his protected class were treated differently.

In response, Plaintiffs cite a litany of allegations from the Amended Complaint which they claim sufficiently support each of their claims for Title VI discrimination. We find that the following allegations are sufficient to put the Institutional Defendants on notice of the potential facts that support the claims and to potentially demonstrate the requisite elements of a Title VI claim.

Though the allegations in support of Daricus' claim are more numerous with respect to the harassing behavior, he does allege that he was wrongfully accused of cheating and given a failing grade (Doc. 16 ¶¶ 49-54), was denied a position as an RA because he presented a greater risk that he would "drink, smoke, and not follow the rules" (*Id.* ¶¶ 55-58), and was denied classroom assistance when Caucasian students were granted said assistance (*Id.* ¶ 106-112), among other things. Notably, our task at this juncture is not to evaluate whether Plaintiffs can ultimately prove their claims, but rather whether they have stated a plausible claim for relief. We thus find that, at this stage, the Amended Complaint sufficiently alleges some adverse actions taken against Daricus as the result of his race.

Daryl likewise has alleged facts to support a discrimination claim under Title VI sufficient to overcome Defendants' Motions to Dismiss. In addition to

the harassing behavior, Daryl alleges that he was not permitted to take an exam that he missed due to a death in his family (Doc. 16 ¶¶ 72-76), his grades were adversely adjusted for behavior when Caucasion students' grades were not for the same conduct (Doc. 16 ¶¶ 91-92), he was erroneously advised that he could not pursue a second associate's degree necessary to receive a bachelor's degree despite other students having this opportunity (*id.* ¶¶ 124-127), was denied the opportunity to improve his grades when those opportunities were available to a Caucasian student (*id.* ¶¶ 166-177) and, ultimately, invokes his suspension from Penn College. As noted above, we are evaluating whether the Plaintiffs have stated a *prima facie* case - not whether they will ultimately survive the burden-shifting analysis required to prove their case. Thus, Daryl has likewise stated a claim for discrimination in violation of Title VI upon which relief could be granted.

### b. *Hostile Environment (Counts VI and XIX)*

Defendants aptly identify the following elements necessary to demonstrate a *prima facie* case for hostile environment:

> (1) [the plaintiff] is a member of a protected class; (2) [plaintiff was harassed because of] race, color or national origin; (3) defendant had actual knowledge of and was deliberately indifferent to the harassment; and (4) the harassment was so severe and objectively offensive that it deprived plaintiff of access to the educational benefits or opportunities

provided by the school.

(Doc. 31 p. 7.) Defendants maintain that Plaintiffs each fail to allege a deprivation of educational benefits or opportunities, and assert that, despite his dismissal, Daryl "cannot base a hostile environment claim . . . upon . . . a single act of alleged discrimination." (*Id.* (citing *Rivera v. County of Monroe*, 2010 U.S. Dist. LEXIS 115418 (M.D. Pa. Oct. 29, 2010) (Munley, J)).) The Institutional Defendants apparently misconstrue our colleague Judge Munley's point and erroneously cite *Rivera* for the proposition that one deprivation of access to opportunities via a dismissal would be insufficient to make out a claim. However, the cited passage refers to a single act of discriminatory behavior rather than its effect. We thus do not view *Rivera* as a case providing support for the Institutional Defendants' Motions.

We find that each Plaintiff has adequately alleged facts to support a claim for hostile environment in violation of Title VI. The Amended Complaint identifies, and Defendants do not deny, a pattern of harassing, hostile behavior that was reported to administrators and staff at Penn College, and further alleges that nothing was done to attempt to rectify that discrimination. Further, as noted in the preceding subsection, Plaintiffs have each identified several alleged deprivations of educational opportunities or benefits.

### c. *Retaliation*

In order to state a claim for retaliation under Title VI, a plaintiff must allege facts sufficient to demonstrate three factors: (1) the plaintiff engaged in protected activity, (2) the defendants responded with "retaliation", *see Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) and (3) the protected activity was a substantial or motivating factor of the alleged retaliation. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). *See also Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006).

Defendants maintain that Daryl has failed to allege a cause of action for retaliation because he fails to allege that his dismissal from Penn College was related to his complaints submitted about Penn College to the Pennsylvania Human Relations Commission ("PHRC"). Defendants argue that the two cannot be related because the complaints were submitted too long before his dismissal and did not concern his academic performance. (Doc. 31 p. 8.) Further, Defendants assert that Daricus cannot maintain a retaliation action because he fails to identify any protected activity he engaged in and cannot demonstrate any adverse action taken as a result.

We find that Daryl has sufficiently stated a claim upon which relief can be granted for retaliation. Daryl's allegations suggest that the adverse actions he

encountered subsequent to his complaint with the PHRC could have been retaliation for his protected activity. Daricus, however, has not sufficiently alleged a claim of retaliation. The Amended Complaint identifies no protected activity that Daricus engaged in. Further, Plaintiffs do not even attempt to argue in opposition that Daricus engaged in any specific protected activity, and merely rely on the allegations regarding racial discrimination and hostility. Therefore, Daricus fails to state a claim upon which relief could be granted.

### 2. Counts VIII, IX, X, XI, XII, and XIII

#### a. Failure to Exhaust

The Institutional Defendants argue that Daryl has failed to exhaust his administrative remedies before asserting claims under the PHRA and PFEOA. To bring a claim under the PHRA, a plaintiff must first file a complaint with the PHRC. 43 P.S. § 959(h). The procedure for processing a complaint and any available remedies under the PFEOA is in accordance with the PHRA, 24 P.S. § 5007, and, thus requires a complainant to first file a complaint with the PHRC.

In support of the Motion, Defendants note that Daryl filed one complaint with the PHRC in September of 2008 and alleged only harassment by Defendant Pandolfi. Defendants maintain that because Daryl did not include all of the claims or incidents that he now alleges and because he did not file subsequent complaints

with the PHRC related to the other conduct, he has not exhausted his administrative remedies and thus is barred from now asserting the claims in a private action. Plaintiffs respond that Defendants are arguing that a plaintiff should be required to repeatedly file claims with respect to ongoing discrimination, a position that has been considered and rejected. Further, Plaintiffs assert that Daryl's claims should not be limited to one count of discrimination because of his failure to "check off" the retaliation box or the hostile environment box because it is inappropriate to penalize a person with no legal background in this manner.

For purposes of exhaustion, the scope of a complaint in a subsequent private action is not limited to the exact allegations of the administrative complaint, but rather "defined by the scope of the [] investigation which can reasonably be expected to grow out of the charge of discrimination. . . ." *Hicks v. ABT Associates, Inc.*, 572 F. 2d 960, 965 (3d Cir. 1978); *see also Lesko v. Clark Publisher Services*, 904 F. Supp. 415, 418 (M.D. Pa. Sept. 21, 1995) (Rambo, J.). As noted by the United States District Court for the Eastern District, "[c]ourts have held that a plaintiff needs to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; 'the district court has ancillary jurisdiction such a claim when it grows out of an administrative charge that is

properly before the court.'" *Smith-Cook v. AMTRAK*, 2005 U.S. Dist. LEXIS 27297, *6 (E.D. Pa. Nov. 10, 2005) (Yohn, Jr., J.) (quoting *Gupta v. East Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981)).

We find that Daryl has exhausted his administrative remedies sufficiently to bring a private cause of action. Though in his original administrative complaint he describes discrimination related to the harassment by one named Defendant, the allegations of subsequent harrassment and hostile conduct included in Daryl's discrimination and hostile environment claims were reasonably included within the scope of the original investigation. Similarly, we will not penalize Daryl for failing to check the appropriate box for a claim for hostile environment; the claims and underlying conduct are so related that they are easily encompassed within the original investigation, and it would be unfair to penalize an individual without legal training to recognize all potential causes of action. We do not believe this reasoning necessarily extends to a claim for retaliation because the basis of the claim – retaliation for protected activity – is not the same as the harassment that was asserted. Nonetheless, Daryl's claim for retaliation grows out of the original administrative charge, and therefore is properly within the ancillary jurisdiction of the Court. *See Smith-Cook*, *infra*.

b.      *Failure to State a Claim*

The Institutional Defendants alternatively argue that Daryl's claims under the PHRA and PFEOA must be dismissed because he fails to state a claim upon which relief can be granted. The requisite elements to assert a claim for racial discrimination under Title VI, § 1981, or the PHRA are the same. *See Pryor v. NCAA*, 288 F.3d 548, 569 (3d Cir. 2002) (elements for Title VI and § 1981 are "identical"). Logically, the analysis under the PFEOA would likewise be the same. Therefore, we incorporate our analysis articulated in Section IV.A.1, above, regarding Daryl's claims under Title VI and find that he has sufficiently stated claims upon which relief can be granted. Further, Plaintiffs have withdrawn their requests for punitive damages under the PHRA and PFEOA claims.

### 3. *Counts XV and XXII*

#### a. *Preemption*

The Institutional Defendants seek dismissal of each Plaintiff's intentional infliction of emotional distress claim, asserting that the common-law claim is preempted by the PHRA. In addressing this preemption argument we observe that our colleague the Honorable Sylvia Rambo has noted, "[t]he general rule that has emerged, albeit tortuously, is simply that if all or part of the facts that would give rise to a discrimination claim would also independently support a common law claim, the common law claim is not preempted by the PHRA. . . ." *Keck v. Comm.*

19

*Union Ins. Co.*, 758 F. Supp. 1034 (M.D. Pa. 1991). Thus, accepting *Keck*, the Institutional Defendants argue that the underlying discrimination is the entire basis of both Daryl and Daricus' intentional infliction of emotional distress claims, and that neither claim would be viable without the alleged discrimination. The Defendants do not, however, address the viability of the claims beyond asserting their preemption.

We find that Plaintiffs' intentional infliction of emotional distress claims are not preempted by the PHRA. We again note that we are not addressing the merits of Plaintiffs' claims at this stage, but recognize that both Daryl and Daricus allege a pattern of harassing behavior. That behavior could, conceivably, amount to the outrageous behavior necessary to support a claim for intentional infliction of emotional distress even in the absence of any duty by the Defendants to avoid discrimination on the basis of race. Therefore, the intentional infliction of emotional distress claims can have a factual basis independent of the discrimination claims, and thus are not preempted.

b.     *Punitive Damages*

Defendants argue that, even if Plaintiffs may proceed with their intentional infliction of emotional distress claims they may not recover punitive damages against Defendants. In support, Defendants maintain that Penn State and Penn

College are instrumentalities of the Commonwealth of Pennsylvania. Defendants

contend that because punitive damages are not recoverable against the

Commonwealth and its agents, *see* 42 Pa. C.S. § 8528(c); *Feingold v.*

*Southeastern Pa. Transp. Auth.*, 517 A.2d 1270 (Pa. 1986), Plaintiffs may not

recover punitive damages from the named Defendants. Plaintiffs respond that

Defendants are misguided in their application of Penn State's and Penn College's

status as an instrumentality of the state for punitive damages purposes.

Defendants retort that this assertion is inconsistent with Plaintiffs' allegations of §

1983 violations because, to pursue a § 1983 claim, a plaintiff must assert that the

defendant is a state actor.

Title 24, § 2510-504 of the Pennsylvania Statutes decrees that, like the

Pennsylvania State University, Penn College is a state-related institution and is

generally an instrumentality of the Commonwealth of Pennsylvania. The statute

further identifies that Penn College shall have all rights, powers, privileges and

immunities, and duties of a nonprofit corporation. 24 P.S. § 2510-504.

Nonetheless, the application of Penn State's status as an instrumentality of the

state has been limited for certain purposes. In *The Pennsylvania State University*

*v. Derry Township School District*, the Supreme Court of Pennsylvania addressed

whether the University is an instrumentality of the Commonwealth for purposes of

exemptions from real-estate taxation. 731 A.2d 1272 (Pa. 1999). The Supreme

Court noted that the characteristics of Penn State changed greatly over the passage

of time, and concluded that Penn State is not an agency of the Commonwealth.

The Court recognized that Penn State is funded in great part by appropriations

from the Commonwealth, but nonetheless noted that the "mere funding of an

institution does not . . . make it an instrumentality of the state." *Id.* at 1274. The

Court likewise recognized other characteristics of the University that are plainly

governmental (for example, Penn State employees are included within the

definition of "state employees" under the State Employees' Retirement Code, 71

Pa. C.S. § 5102); yet in other respects it has non-governmental characteristics

(such as the inapplicability of the Right to Know Act, 65 P.S. §§ 66.1-66.4, which

opens public records of state agencies to inspection by the public). Ultimately, the

Supreme Court concluded that, with respect to real-estate taxes, Penn State was

not an instrumentality of the state because of the composition of its Board of

Trustees, who have the authority to control and dispose of Penn State property.

Penn College, like Penn State, is likewise denied agency or instrumentality status

in certain realms. *See, e.g., In the Matter of James Stephens v. Pennsylvania

College of Technology*, 2010 PA O.O.R.D. LEXIS 163, *1 (Pa. Office of Open

Records, March 12, 2010) (Penn College "is not an agency subject to the [Right to

Know Law], but rather a non-profit part of a state-related institution.").

As demonstrated above, there is no settled law on the issue of whether Penn State and Penn College are instrumentalities of the state with respect to punitive damages. We find that the record at this juncture is likewise insufficiently developed for the Court to fully evaluate the parties' arguments regarding the applicability of punitive damages. We will therefore dismiss each Motion without prejudice as it relates to punitive damages, and give the parties the opportunity to more fully develop their arguments, and relevant factual bases, before raising the issue again in a subsequent motion for summary judgment or at trial.[1]

### 4.    *Penn State as a Defendant*

Penn state offers one argument in addition to those offered by both Institutional Defendants: that Plaintiffs are unable to maintain an action against it because they fail to allege a single action that was taken by or on behalf of Penn State. Further, Penn State maintains that Plaintiffs fail to allege that Penn State operates, controls, or is otherwise legally responsible for Penn College. In support, Defendants argue that Penn College is a statutory creation and, because a State Senator and a State Representative are the two required members of an

---

[1] Resolution of this issue will only be necessary, however, if Plaintiffs are able to satisfy their burden of demonstrating reckless or wanton behavior that would warrant punitive damages on the merits.

eleven-member Board, "Penn College is not controlled in any manner by Penn State." (Doc. 30 p. 19.) Notably however, Defendants neglect to mention that Penn College "is a nonprofit corporation organized and existing under the laws of the Commonwealth and is a wholly controlled affiliate of the Corporation for Penn State", and "The Corporation for Penn State is a wholly controlled affiliate of the Board of Trustees of the Pennsylvania State University. . . ." 24 P.S. § 2510-503.

Again, we find that deciding this somewhat novel issue in the present Motion to Dismiss would be inapt because of a largely non-existent record in that respect. For the present purposes, we find that Plaintiffs have sufficiently alleged claims against Penn State. Similar to the issues regarding Penn State and Penn Tech's instrumentality status, our denial of the Motions is without prejudice. It may well be that after the record is further developed Penn State will elect to revisit this argument at the summary judgment stage, and nothing herein is intended to preclude it from doing so.

### B. Individual Defendants' Motion to Dismiss (Doc. 38)

The Individual Defendants assert the following nine arguments in support of their Motion to Dismiss (Doc. 38): A) Counts I and XVI must be dismissed because Plaintiffs fail to state a § 1981 discrimination claim that is plausible on its face; B) Counts II, III, IV, and XVII must be dismissed because Plaintiffs fail to

properly allege any § 1983 claim for due process, equal protection, or retaliation against the Individual Defendants; C) Counts V, VI, VII, XVIII, XIX, and XX must be dismissed because of Plaintiffs' failure to state claims upon which relief can be granted; D) Counts VIII, IX, X, XI, XII, and XIII must be dismissed because of Daryl's failure to exhaust administrative remedies pursuant to Pennsylvania law; E) Counts VIII, IX, X, XI, XII, and XIII must be dismissed for failure to state a claim upon which relief can be granted against the Individual Defendants; F) Count XIV must be dismissed because the negligence claim is preempted by the PHRA claims; G) Count XV must be dismissed because Daryl's intentional infliction of emotional distress claim is preempted by the PHRA; H) Count XXI must be dismissed because Daricus' negligence claim is preempted by the PHRA; I) Count XXII must be dismissed because Daricus' intentional infliction of emotional harm claim is likewise preempted. Plaintiffs have withdrawn their claims for negligence, and thus we will address the Individual Defendants' arguments *ad seriatim* below.

1.     *Counts I and XVI*

The Individual Defendants argue that Plaintiffs fail to state a claim for racial discrimination under § 1981 because Plaintiffs have failed to identify any contract or any Defendant's authority to mandate the reinstatement of Daryl. In response,

Plaintiffs highlight the contractual relationship between a student and a university, whereby the student agrees to pay tuition in exchange for an education, and further argue that the Individual Defendants' authority to reinstate is inherent.

Section 1981 provides, in pertinent part, "all persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981. The right to "make and enforce contracts" encompasses the ability to enjoy all benefits and privileges of the contract. *Id.* As noted above, the requisite elements to assert a claim for racial discrimination under Title VI, § 1981, or the PHRA are the same. *See Pryor v. NCAA*, 288 F.3d 548, 569 (3d Cir. 2002) (elements for Title VI and § 1981 are "identical"). Therefore, we incorporate our analysis from Section IV.A.1, *infra*, and find that Plaintiffs have sufficiently alleged a § 1981 claim upon which relief could be granted.

### 2. Counts II, III, IV, and XVII

Defendants maintain that Plaintiffs' claims asserted under 42 U.S.C. § 1983, Daryl's claims relating to due process, retaliation, and equal protection and Daricus' claim relating to equal protection, must be dismissed for failure to state a claim upon which relief could be granted. We will address these arguments in

turn.

### a.     *Due Process*

Defendants argue that Daryl's claim for a violation of due process should be dismissed because he received all of the process to which he was entitled before he was suspended from Penn College.  Daryl argues that he had a property right in his "continued enrollment" and thus his dismissal without a hearing was in violation of his due process rights.  While we accept Defendants' argument that "a due process hearing is not required every time a student is terminated for poor scholarship" (Doc. 42 p. 7 (citing *Ross v. Penn State University*, 445 F. Supp. 147 (M.D. Pa. 1978))), we believe the record is insufficiently developed to effectively evaluate the amount of process that was due to Daryl and whether he was deprived of it.  Therefore, we will dismiss Defendants' Motion in that respect.

### b.     *Retaliation*

Defendants next maintain that Daryl's claim for retaliation under § 1983 must be dismissed because he fails to specify the protected activity he engaged in that triggered Defendants' retaliation.  Defendants assert that "[t]he Plaintiffs' [*sic*] alleged complaints did not involve allegations that Plaintiff Daryl Releford's federal rights were violated" and, therefore, he apparently was not participating in a protected activity by complaining.  (Doc. 42 p. 8.)  The Amended Complaint,

however, clearly states that Daryl felt that he was being discriminated against on the basis of his race, and that he complained of that discrimination. The alleged harassment and allegedly related suspension therefore clearly implicate federally protected rights to be free from discrimination and to pursue avenues to vindicate discrimination through process of law.

Further, Defendants claim that Daryl fails to plead that any individual Defendant was responsible for his removal from Penn College, and therefore his claims of retaliation against the Individual Defendants should fail. Defendants fail to limit this sweeping argument to any one particular Defendant who was not responsible, but rather argue that none of the sixteen named Defendants were responsible. Further, Defendants fail to support their arguments by any controlling or even persuasive law. Based upon the allegations against the Individual Defendants and our analysis with respect to retaliation found elsewhere in this Memorandum, we find that Daryl has pleaded a claim upon which relief could be granted and will deny the Motion in that respect.

c.    *Equal Protection*

Finally, with respect to Plaintiffs' § 1983 claims, Defendants argue that neither Daryl nor Daricus can sustain claims for equal protection under § 1983. An equal protection analysis utilizes the familiar *McDonnell Douglas* burden-

shifting framework as articulated in Section IV.A.1.a. We will, therefore,

incorporate that analysis and find that both Daryl and Daricus have alleged equal

protection claims.

### 3. *Counts V, VI, VII, XVIII, XIX, and XX*

The Individual Defendants incorporate the same arguments as articulated by

the Institutional Defendants in support of their assertion that Plaintiffs' Title VI

claims must be dismissed. Because the arguments and controlling legal principles

are identical, we shall incorporate our analysis articulated in Section IV.A.1. We

thus find that Daryl has properly alleged claims for discrimination, hostile

environment, and retaliation. We further find that Daricus has stated claims for

discrimination and hostile environment, but fails to state a claim upon which relief

could be granted for retaliation.

### 4. *Counts VIII, IX, X, XI, XII, and XIII*

The Individual Defendants argue that Daryl's claims under the PHRA and

the PFEOA must be dismissed because his failure to exhaust his administrative

remedies is a jurisdictional bar to asserting the claims and, alternatively, because

he fails to state a claim upon which relief can be granted. We incorporate our

analysis from Section IV.A.2, *infra*, and find that Daryl exhausted his

administrative remedies and thus may assert his claims under Pennsylvania law.

### 5. Counts XV and XXII

The Individual Defendants assert that both Plaintiffs' intentional infliction of emotional distress claims must be dismissed because each is preempted by the discrimination actions. Individual Defendants further argue that punitive damages are prohibited because each individual Defendant was a state actor. Because our analysis is the same, we will incorporate Section IV.A.3. and find that Plaintiffs' intentional infliction of emotional distress claims, and related prayers for punitive damages, are actionable.

## V. CONCLUSION

For the reasons articulated at length above, we will grant Defendants Penn College and Penn College Police's Motion to Dismiss (Doc. 22) and Penn State's Motion to Dismiss (Doc. 23), and the Individual Defendants' Motion to Dismiss (Doc. 38) in part and deny each in part. In sum, all claims asserted by Daryl and Daricus, except for Daricus' Title VI Retaliation Claim, may proceed to discovery as stated. Considerate of the leniency afforded to civil rights plaintiffs, however, we will grant Plaintiffs the opportunity to amend the Amended Complaint with respect to Daricus' retaliation claim to cure the noted deficiencies if such amendment warranted. Further, as indicated above, we deny without prejudice Defendants' Motions regarding the applicability of punitive damages against Penn

State, Penn College, and its agents, and regarding whether Penn State may be held legally responsible for Penn College's actions. Defendants may again raise these arguments, if warranted, when the record is more developed.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. Defendants the Pennsylvania College of Technology and the Pennsylvania College of Technology Police Department's Motion to Dismiss (Doc. 22) is **GRANTED IN PART and DENIED IN PART** to the extent indicated in this Memorandum;

2. Defendants the Pennsylvania State University (Doc. 23) is **GRANTED IN PART and DENIED IN PART** to the extent indicated in this Memorandum;

3. The Individual Defendants' Motion to Dismiss (Doc. 38) is **GRANTED IN PART and DENIED IN PART** to the extent indicated in this Memorandum;

4. If warranted with bases in fact or law, Plaintiffs **MAY FILE** a Second Amended Complaint within fourteen (14) days of the date of this Order to properly plead a Title VI Retaliation Claim by Daricus Releford.

_/s/ John E. Jones III_
John E. Jones III
United States District Judge